UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALICE BOWERS,

                Plaintiff,

v.                                                        Case No. 5:07-cv-82-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 12) and both parties have filed briefs outlining their respective positions. (Docs. 21 & 22.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

### I. PROCEDURAL HISTORY

On August 26, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits, claiming a disability onset date of August 15, 2001. (R. 61-63.) Plaintiff's application was denied initially (R. 42-44), and upon reconsideration. (R. 48-50.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 51.) The ALJ conducted Plaintiff's administrative hearing on August 24, 2004. (320-31.) The ALJ issued a decision unfavorable to Plaintiff on November 23,

2004. (R. 26-31.) Plaintiff timely filed a request for review with the Appeals Council (R. 22), which initially denied her request (R. 17-20) and then again denied her request after considering additional information. (R. 4-8, 9-12.) On February 9, 2007, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on November 30, 1963 and was forty (40) years old at the time of the hearing. (R. 322.) Plaintiff has an eleventh grade education. (R. 323.) She has worked as a cashier, office clerk, meat wrapper, waitress and delivery driver. (R.74.) Plaintiff contends that she has been unable to work since August 15, 2001 due to chronic lower back pain, dysfunctional internal bleeding, and a fractured metatarsal. Plaintiff's date last insured for Title II benefits was March 31, 2002.

The medical records show that Plaintiff had a history of longstanding dysfunctional uterine bleeding. (R. 129.) During December 2000, Plaintiff was seen in

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

the emergency room with complaints of vaginal bleeding  (R. 114-26) and in March 2001 Plaintiff underwent a total abdominal hysterectomy. (R. 127-36.)

In July 2001 Plaintiff fractured a bone in her left foot and was treated by Mark A. Lombardo, D.P.M.  (R.137-45.)  On September 1, 2001, Dr. Lombardo released Plaintiff for work without any limitations.  (R. 137.)

In March and April 2002, Plaintiff saw Richard Smith, M.D., complaining of lower back pain.  (R. 146-65.)  X-rays of the thoracic spine were negative; x-rays of the lumbar spine showed mild scoliosis; and an MRI of the lumbar spine was negative.  (R. 148-51; 164-66.)  Dr. Smith diagnosed a lumbar sprain and recommended a short course of physical therapy. (R. 148.)

Progress notes from Murrah Orthopedics show that Plaintiff was seen there in June 2002 complaining of a one-year history of lower back pain.  (R. 168.)  Plaintiff had tenderness at the sacroliac joints without muscle spasm.  (Id.)  Plaintiff returned in July 2002, still complaining of lower back pain and it was noted that her C-reactive protein had been positive and there was a history of positive sedimentation rate in 1992. (R. 167.) Plaintiff was diagnosed with seronegative spondyloarthropathy and enthesopathy and was told she needed a rheumatology consultation.  (Id.)

In July 2002, Plaintiff saw  rheumatologist, Laura B. Summers, M.D.  (R. 201-03.) In September 2002, Plaintiff still complained of lower back pain and it was noted that physical therapy and a prednisone taper had not helped.  (R. 199.)

Physical therapy progress notes show that Plaintiff had a few sessions in August 2002, before stopping so that more tests could be performed.  (R. 169-96.)  Plaintiff

reportedly obtained temporary relief from the physical therapy, but noted that the 45-minute ride home aggravated her back. (R. 169.)

From January 2002 through November 2002, Plaintiff was treated by M. Naeem Khan, M.D. (R. 230-51.) On January 9, 2002, Dr. Khan diagnosed Plaintiff with asthmatic bronchitis, migraine headaches, acute sinusitis and low back pain, likely degenerative joint disease with mild scoliosis. (R. 242-44.) On February 4, 2002, Plaintiff reported flu-like symptoms and reported feeling "very anxious and stressed" (R. 240.) On April 15, 2002 (approximately two weeks after Plaintiff's date last insured), Plaintiff reported jaw pain, throat soreness, ear pain and difficulty sleeping. (R. 238-39.) Dr. Khan noted that Plaintiff was "pleasant but anxious" and diagnosed Plaintiff with TMJ syndrome, pharyngitis, and insomnia. (Id.) On June 10, 2002, Dr. Khan noted that Plaintiff has a "known history of anxiety and depression." (R. 237.) Plaintiff reported that she was "starting to feel a little more depressed", that she has had "agitation and anxiety spells, that she has not been sleeping well and she still is getting a lot of headaches. (Id.) Dr. Khan's assessment was "anxiety/depression" and noted that it "appears to be bipolar depression." (Id.) Dr. Khan prescribed Zyprexa[22] and Xanax[23] and noted that a psychiatry consult would be set up "as needed." (Id.) There is no record of Plaintiff ever being referred to a psychologist or psychiatrist. On September 9, 2002, Plaintiff was seen by Dr. Khan and she reported worsening back pain and anxiety

---

[22] A medicine approved for the treatment of schizophrenia, acute manic or mixed episodes of bipolar disorder, and maintenance treatment in bipolar disorder. See http://www.zyprexa.com.

[23] A medicine approved for the treatment of anxiety disorders, including panic disorder, generalized anxiety disorder, and anxiety associated with depression. See http://xanax.com.

and stress related to the pain. (R. 235-36.) Dr. Khan's assessment was low back pain with the possibility of underlying anxiety and depression exacerbating her pain. (R. 235-36.)

Dr. Khan referred Plaintiff to Bennett Rosenthal, MS, PhD, MD for neurological evaluation. (R. 226-29.) Plaintiff reported burning aching pain in the mid lower back that is aggravated by any kind of activity. (R. 228.) Based on his examination, Dr. Rosenthal opined that Plaintiff's low back pain was probably of skeletal origin. (Id.) Dr. Rosenthal advised Plaintiff that there was very little that he could do to help, but noted that treatment with chronic pain prophylaxis may help relieve the symptoms. (Id.) Dr. Rosenthal prescribed Keppra. (Id.) On October 18, 2002, Plaintiff had an MRI scan of her cervical spine and brain. (R. 219-23.) On October 24, 2002, Dr. Rosenthal noted that the recent MRI scan of Plaintiff's brain was normal but that the MRI of her cervical spine showed evidence of diffuse disc bulging at C6-7 and C5-6 with some moderate spinal stenosis. (R. 226.) Dr. Rosenthal opined that there was nothing in the cervical spine serious enough to justify surgical intervention and he encouraged Plaintiff to try Keppra for chronic pain control. (Id.)

On November 1, 2002, Dr. Khan's assessment was low back pain and anxiety/depression. (R. 230.) However, in response to a request by the Office of Disability Determinations dated December 13, 2002, Dr. Khan, opined that Plaintiff does not suffer "from a mental impairment that significantly interferes with daily functioning." (R. 223.)

There are two physical residual function capacity ("RFC") assessments of record which were performed by non-examining state agency physicians. Violet A. Stone,

M.D. performed an assessment on December 24, 2002. (R. 252-59) and Todd Patterson, DO performed a second assessment on April 18, 2003. (R. 288-95.)  Based on their review of the medical records, Stone and Patterson concluded that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push and/or pull without limitation.  (R. 253, 302.)  Stone found that Plaintiff was limited to occasional stooping (R. 254), while Patterson found that Plaintiff could frequently climb ramp/stairs and balance; occasionally stoop, kneel, crouch and crawl; never climb ladders/ropes/scaffolds; and that she should avoid concentrated exposure to fumes and hazards.  (R. 290, 292.)

There are two psychiatric review technique forms which were completed by non-examining state agency physicians.  Eric Wiener, Ph.D performed his review on January 16, 2003  (R. 260-73) and Edmund S. Bartlett, Ph.D. performed his review on April 15, 2003.  (R. 274-87.)  While Wiener found that Plaintiff's affective and anxiety-related disorders were not severe (R. 260), Bartlett concluded that there was insufficient evidence to make a rating.  Wiener noted that Plaintiff has mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulty in maintaining concentration, persistence, or pace.

At the hearing on August 24, 2004, Plaintiff testified that she stopped working in August 2001 due to lower back pain and her broken toe.  (R. 325.)   Plaintiff testified that she has constant burning pain in her lower back, left shoulder and neck. (Id.) Plaintiff testified that she is only able to sleep for about forty (40) minutes at a time and then she has to get up and move around, that she can sit for fifteen or twenty minutes,

that it is difficult for her to stand while washing dishes or cooking, and that she walks very slowly. (R. 325-27.) Plaintiff also testified that she cannot lift anything because of the pain and that she has high blood pressure due to the pain. (R. 327-28.) Plaintiff testified that Soma helps with the muscle spasms and that the pain medication gives her limited relief. (R. 329.) Plaintiff testified that she previously had tried physical therapy but that it had aggravated her back pain. (R. 330.)

The ALJ determined that on or before the date last insured March 31, 2002, Plaintiff had no severe impairment. (R. 30.) Based on this finding, the ALJ concluded that Plaintiff was not disabled. (Id.)

## IV.  DISCUSSION

Plaintiff contends that the ALJ failed to properly evaluate whether her impairments were severe at the second step of the sequential disability determination.[24] At the second step, the ALJ must "consider the medical severity of [the claimant's] impairments."[25] In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."[26] This is a threshold inquiry and only claims based on the most trivial

---

[24] Plaintiff also argues that the Commissioner failed to fully and adequately consider the full range of the Plaintiff's impairments in determining her ability to perform substantial gainful activity; that the Commissioner improperly applied the grids; and that the Commissioner failed to fully and adequately develop and weigh the evidence in this matter. However, based on the Court's finding that the ALJ did not err at the second step, the Court need not consider these additional arguments.

[25] See Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting Phillips v. Barnhart, 357 F.3d. 1232, 1237 (11th Cir. 2004).

[26] See id.

impairments are rejected.[27] "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[28] A diagnosis is insufficient; instead, Plaintiff must show the effect of the impairment on her ability to work.[29]

     Plaintiff argues that there was no explicit or adequate rationale for ignoring the opinions of the two "state agency consultative evaluators." Plaintiff is referring to the two "Physical Residual Functional Capacity Assessments" performed by non-examining (and not consultative) state agency physicians. (R. 252-59, 288-95.) Based on their review of the medical records, Violet A. Stone, M.D. and Todd Patterson, DO concluded that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push and/or pull without limitation. (R. 253, 302.) Stone found that Plaintiff was limited to occasional stooping (R. 254), while Patterson found that Plaintiff could frequently climb ramp/stairs and balance; occasionally stoop, kneel, crouch and crawl; never climb ladders/ropes/scaffolds; and that she should avoid concentrated exposure to fumes and hazards. (R. 290, 292.) Plaintiff argues that since these non-examining state agency physicians found limitations, the ALJ should have found at step two that Plaintiff had a severe impairment. However, even if these assessments (that identified minimal

---

[27] See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

[28] Id.

[29] See Wind, 133 Fed.Appx. at 690 (*quoting* McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

limitations) offer support for Plaintiff's position, they do not constitute substantial evidence on which to base an administrative decision.[30]

Second, Plaintiff argues that the ALJ's conclusion that Plaintiff's mental impairments were not severe was not supported by substantial record evidence. Here, the ALJ concluded that Plaintiff's complaints of depression and anxiety were not described in detail and "[a]lthough medication was prescribed, no referral was made for evaluation or therapy." (R. 29.) There is no dispute that Plaintiff's date last insured was March 31, 2002; and thus, Plaintiff must be found disabled from some date on or before March 31, 2002.

Other than reporting to Dr. Khan on February 4, 2002, that she felt "very anxious and stressed" (R. 240), there is no record evidence showing that Plaintiff had a severe mental impairment prior to March 31, 2002. It was not until June 10, 2002 – more than two months after expiration of Plaintiff's insured status – that Dr. Khan observed that Plaintiff was more depressed and that she complained of anxiety spells. At that time, Dr. Khan diagnosed Plaintiff with anxiety/depression, noting that it "appears to be bipolar depression" and prescribed Zyprexa and Xanax. Dr. Khan noted that a psychiatry consult would be set up "as needed." However, there is no record of Plaintiff ever being referred to or seen by a psychologist or psychiatrist. Moreover, in response to a request by the Office of Disability Determinations dated December 13, 2002, Dr. Khan, opined that Plaintiff does not suffer "from a mental impairment that significantly interferes with daily functioning." (R. 223.)

---

[30] See Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985.)

In addition, the Commissioner sought the opinion of non-examining state agency physicians regarding Plaintiff's alleged mental impairments.[31]  While one physician concluded that there was insufficient evidence for a mental rating (R. 274-87.), Eric Wiener, Ph.D completed a Psychiatric Review Technique Form on January 16, 2003. (R. 260-73.) Wiener found that Plaintiff's affective and anxiety-related disorders were not severe (R. 260) and noted that Plaintiff has mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulty in maintaining concentration, persistence, or pace.

Nevertheless, Plaintiff argues that the ALJ failed to adequately develop the record.  It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[32]  This obligation exists whether or not a claimant is represented by counsel.[33]  As a hearing is non-adversarial in nature,[34] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[35]  The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.[36]

---

[31] See 42 U.S.C. 421(h) providing in pertinent part, "in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment."

[32] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[33] Zaldivar, 81 F. Supp 2d at 1359.

[34] Id.

[35] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[36] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

Here, Plaintiff argues that although Plaintiff's treating physician diagnosed her with bipolar depression and prescribed medication for that condition, the ALJ improperly dismissed the mental impairments with the "simple statement" that "her complaints of depression and anxiety were not described in detail. Although medication was prescribed no referral was made for consultation or therapy." Plaintiff argues that this is an insufficient reason for reaching a finding of non-severity, and that the ALJ should have ordered a consultative examination.

As discussed above, Plaintiff's medical records regarding anxiety and depression were limited. However, this does not render the record evidence ambiguous or incomplete. Based on the record evidence, Plaintiff did not report her anxiety and depression until February 2002 (one month before the expiration of her insured period). Moreover, even though Plaintiff's treating physician, Dr. Khan, diagnosed Plaintiff with anxiety and depression and prescribed medications in June 2002, he never found that a psychiatry consultation was needed and he opined in December 2002 that Plaintiff did not suffer "from a mental impairment that significantly interferes with daily functioning." (R. 223.) As noted above, a diagnosis is insufficient to show that Plaintiff has a severe impairment; instead, Plaintiff must show the effect of the impairment on her ability to work.

Accordingly, the AlJ was not required to order a consultative evaluation before concluding that Plaintiff's impairments were not severe. On the contrary, the record, although limited, was sufficient for a decision and additional expert testimony was unnecessary.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter final judgment in favor of the Defendant consistent with this Order and to close the file.

**IN CHAMBERS** in Ocala, Florida, on August 13, 2008.

GARY R. JONES
United States Magistrate Judge


Copies to:
    Counsel of Record